S. Peter Serrano
United States Attorney
Eastern District of Washington
Bree R. Black Horse
Assistant United States Attorney
402 East Yakima Ave, Suite 210
Yakima, WA 98901
Telephone: (509) 454-4425

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | Case No.: 1:24-CR-02054-MKD-2 |
|---|---|
| Plaintiff, | |
| v. | **UNITED STATES'**<br>**SENTENCING MEMORANDUM** |
| KATHLEEN ARDITH ALBERT, | |
| Defendant. | |

Plaintiff United States of America, by and through the United States Attorney for the Eastern District of Washington, S. Peter Serrano, and Bree R. Black Horse, Assistant United States Attorney, submits this Sentencing Memorandum. The Defendant plead guilty pursuant to a plea agreement to Aiding and Abetting Assault with a Dangerous Weapon in Indian Country, in violation of 18 U.S.C. §§ 113(a)(3), 1153(a) and 2. ECF Nos. 70, 71. The United States recommends the Court impose a maximum guideline sentence of 27 months imprisonment to be followed by 3 years of supervised release and the $100.00 mandatory special penalty assessment.

## I. OFFENSE LEVEL AND CRIMINAL HISTROY

The draft Presentence Investigation Report ("PSIR") provides for a Total Offense Level of 14 a criminal history category of III, resulting in a recommended Guideline range of incarceration 21 to 27 months. ECF No. 73 ¶¶ 37, 67, 129. The United States noted one scrivener's error in the draft PSIR, which has been addressed. The Defendant has raised several objections to the draft PSIR and otherwise suggests grounds for departing or varying downward from the guideline range set forth in the PSIR. *See* ECF No. 75. The Court should overrule the Defendant's objections to the draft PSIR and decline to depart or vary downward for the reasons set forth below.

### 1. The Court Should Overrule Defendant's Objection re: Mitigating Role and Decline to Depart or Vary Downward on this Basis

The Defendant objects to the draft PSIR because it does not include a reduction for a mitigating role pursuant to U.S.S.G. §3B1.2. ECF No. 75 at 2. The Defendant argues a reduction on these grounds is appropriate because she was only at the El Corral Motel to obtain drugs, had no prior knowledge of the kidnapping in Room 1, did not "use, display or brandish" the loaded firearm in her possession, did not verbally threaten any of the captives in Room 1, and did not prevent the captives from leaving the room after one of the captives threw a microwave at her. *Id*. at 3-4. The Court should overrule this objection and decline to depart of vary downward based on the Defendant's role in the offense.

To be eligible for a minor role reduction, a defendant must prove "by a preponderance of the evidence," *United States v. Rosas*, 615 F.3d 1058, 1067 (9th Cir. 2010), that she was "substantially less culpable than the average participant in the criminal activity," U.S.S.G. § 3B1.2 cmt. 3(A). To determine whether a defendant has met his burden, the Ninth Circuit established a three-part test in *United States v. Dominquez-Caicedo*, 40 F.4th 938 (9th Cir. 2022), *cert. denied,* 143 S. Ct. 2615 (2023):

> First, the court must identify all of the individuals for whom there is "sufficient evidence of their existence and participation in the overall scheme." Second, the court must calculate a rough average level of culpability for these individuals, taking into consideration the five factors in comment 3(C) to the Mitigating Role Guideline. Third, the court must compare the defendant's culpability to that average. If the defendant is substantially less culpable than that average and meets the other criteria, he should be granted a mitigating role adjustment. If the defendant is not substantially less culpable than that average, he is not eligible for the adjustment.

*Id*. at 960. The five factors require the court to assess the "degree" to which the defendant engaged in certain conduct bearing on culpability. U.S.S.G. §3B1.2 cmt. 3(C); *see also United States v. Rodriguez*, 44 F.4th 1229, 1234 (9th Cir. 2022) ("[T]he commentary instructs courts to analyze the *degree* to which each factor applies ....").

The Mitigating Role Guideline's commentary instructs that "[t]he determination whether to apply [a mitigating role adjustment], is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. §3B1.2 cmt. 3(C). These factors are non-exhaustive, and

a district court may also consider other factors when determining whether to apply the reduction. *United States v. Quintero-Leyva*, 823 F.3d 519, 523 (2016). It is the Defendant's burden to demonstrate that she qualifies for the reduction. *United States v. Chichande*, 113 F.3d 913, 923 (9th Cir. 2024). The Defendant has failed to meet that burden in this case.

As a preliminary matter, Section 3B1.2 "does not provide an affirmative right to a mitigating role reduction to every actor *but* the criminal mastermind." *United States v. Bello-Sanchez*, 872 F.3d 260, 264 (5th Cir. 2017). Hence, the mere fact that the Defendant did not plan the kidnapping, use the loaded firearm in her possession on the captives or verbally threaten the captives is not dispositive. More importantly, the Defendant clearly understood the scope of criminal activity in this case. Ms. Saluskin-Cloud handed the Defendant a firearm outside of Room 1 at the El Corral Motel and the Defendant went into Room 1 with the loaded firearm. Once the Defendant was in Room 1 with the firearm, she saw between four and eight nearly naked individuals lined up against a wall that were clearly being held against their will. Rather than leave Room 1 and give the firearm back to Ms. Saluskin-Cloud, the Defendant kept the firearm on her person and stood near the door next to the unidentified female with the machete who proceeded to threaten the captives with violence. The Defendant only left Room 1 after one of the captives attacked her and the unidentified female with a microwave. Although the Defendant appears to not have been involved in the initial planning of the kidnapping

of the victims in Room 1, she is not entitled to a mitigating role reduction because she clearly followed the instructions of Ms. Saluskin-Cloud when she guarded the door inside Room 1 with a firearm—watching the victims and keeping them in Room 1—and drove herself and Ms. Saluskin-Cloud away from the scene of the crime. *See, e.g., Untied States v. Butler*, 635 Fed. Appx. 585 (11th Cir. 2015) (minor role reduction not warranted in sentencing defendant convicted of aiding and abetting a bank robbery, notwithstanding his alleged lack of participation in the initial planning of the robbery because defendant acted as both a lookout and getaway driver). The Court should therefore overrule the Defendant's objection to the PSIR and deny the Defendant's request for a downward departure or variance for a mitigating role.

## II.   DEPARTURES

The United States seeks no departures from the Guidelines in this case.

The Defendant cited several grounds for a downward departure or variance in this case, including Imperfect Coercion or Duress (U.S.S.G. §5K2.12), Imperfect Diminished Capacity (U.S.S.G. §5K2.13), Aberrant Behavior (U.S.S.G. §2K2.20), Lack of Youthful Guidance (U.S.S.G. §5H1.12), and "Traumatic Childhood." Dkt. No. 75 at 5. The Court should decline to apply a downward departure or variance based on all of these grounds.

//

//

//

UNITED STATES' SENTENCING
MEMORANDUM - 5
Case No. 1:24-CR-02054-MKD-2

1. **The Defendant is Not Entitled to a Downward Departure or Variance Based on Coercion or Duress**

The Court may depart downward if "the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense." U.S.S.G. §5K2.12. The Gudelinese explain that "coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency." *Id*. In this case, there is no evidence that Ms. Saluskin-Cloud or the unidentified female with the machete threatened the Defendant with physical injury, substantial damage to property or any other injury if she did not participate in the criminal scheme. Rather, the Defendant opined that she participated in the offense because she did not want to get "punked out." ECF No. 71 at 7.

2. **The Defendant is Not Entitled to a Downward Departure or Variance Based on Imperfect Diminished Capacity**

The Court to depart downward if the defendant committed the offense while suffering from a significantly reduced mental capacity, and the significantly reduced mental capacity contributed substantially to the commission of the offense. U.S.S.G. §5K2.12. As relevant here, the Court may not depart below the applicable guideline range if: (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a

UNITED STATES' SENTENCING
MEMORANDUM - 6
Case No. 1:24-CR-02054-MKD-2

serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public." U.S.S.G. §5K2.12.

In this case, the Defendant's reduced mental capacity was a direct result of her long history of voluntary substance abuse and use of Fentanyl at the time of the offense. ECF Nos. 64-1, 68-3, 71 at 6-7. The facts and circumstances of the Defendant's offense involved serious of threats of violence—specifically, the cutting off the victims' limbs, thus there exists a need to protect the public. ECF No. 71 at 6-7. Finally, the Defendant's long criminal history of arrests and convictions for thefts, drug use, criminal trespass, forgery, domestic violence assault, breaking and entering, and child abuse or neglect indicates a need to incarcerate the Defendant to protect the public. ECF No. 73 ¶¶ 42-88. The Court should also decline to vary downwards based on the Defendant's history of substance abuse and alleged diminished capacity for these same reasons.

### 3. The Defendant is Not Eligible for a Downward Departure or Variance Based on Aberrant Behavior

A downward departure may be warranted for aberrant behavior "in an exceptional case" if the defendant's criminal conduct "represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. §5K2.20(a), (b)(3). The Court may not depart downward if the defendant used a firearm or a dangerous weapon during the offense, or if the defendant has more than one criminal history point. U.S.S.G. §5K2.20(c)(2), (4). The Court may consider a "convergence of factors" and should

UNITED STATES' SENTENCING
MEMORANDUM - 7
Case No. 1:24-CR-02054-MKD-2

consider the "totality of circumstances" when considering where a defendant's behavior falls along the spectrum and whether to grant a downward departure. *United States v. Fairless,* 975 F.2d 664, 667 (9th Cir. 1992). "But there is a limit; when all is said and done, the conduct in question must truly be a short-lived departure from an otherwise law-abiding life." *United States v. Colace*, 126 F.3d 1229, 1231 (9th Cir. 1997). "Only very rarely do [courts] permit aberrant behavior departures when the defendant committed more than one criminal act." *Id*. at 1232.

The Defendant does not qualify for a downward departure based on aberrant behavior because she possessed a loaded firearm during the offense and aided and abetted assault with a dangerous weapon, i.e., a machete. ECF No. 71 at 6-7; U.S.S.G. §2K2.20(c)(2). The Defendant also does not qualify for a departure on these grounds because she has more than one criminal history point. ECF No. 73 ¶¶ 42-88; U.S.S.G. §2K2.20(c)(4). Most importantly, the Court should reject the Defendant's request for a downward departure based on aberrant behavior because the Defendant has not led a law-abiding life and has a consistent behavior of criminal history spanning several years. ECF No. 73 ¶¶ 42-88; *see, e.g., United States v. Pierson,* 121 F.3d 560, 564 (9th Cir. 1997) (no aberrant behavior departure when "criminal conduct reached a significant level of regularity and spanned a considerable period of time."); *United States v. Lam,* 20 F.3d 999, 1004 (9th Cir. 1994) ("[C]alling a consistent criminal's behavior aberrant would be an oxymoron"). Recall, even after the Defendant was indicted in the instant offense, she

persisted with her pattern of unlawful behavior by failing to comply with the court-ordered conditions of her pre-trial release, which ultimately resulted in revocation of that release. *See* ECF Nos. 44, 48, 62.

    **4.    There Exists No Grounds for a Downward Departure Based on Lack of Youthful Guidance and the Court Should Not Vary Downward Because the Defendant had a Traumatic Childhood**

"Lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds in determining whether a departure is warranted." U.S.S.G. §5H1.12. The Court also should decline to vary downwards based on any lack of youthful guidance or traumatic childhood the Defendant may have experienced. The Defendant is thirty-seven (37) years old. ECF No. 73 at 2. The Defendant is not a young woman who made a bad decision one time; rather, the instant offense appears to be the natural consequence of the lifestyle the Defendant has consistently pursued her entire adult life.

## III. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

A sentence of 27 months imprisonment is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2), considering the factors listed in 18 U.S.C. § 3553(a).

//

//

//

UNITED STATES' SENTENCING
MEMORANDUM - 9
Case No. 1:24-CR-02054-MKD-2

1. **THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

    a.    **Nature and Circumstances of the Offense**

On the evening of May 16, 2024, the Defendant was in a room at the El Corral Motel ("Motel") in Toppenish, Washington. While in the room of Nora Saluskin-Cloud at the Motel, Ms. Saluskin-Cloud told the Defendant to come down to Room 1 on the ground floor of the Motel. When they reached the outside of Room 1, Ms. Saluskin-Cloud pulled out a gun and handed it to the Defendant who then put the gun in her pocket. When the Defendant entered Room 1, the Defendant saw seven or eight people lined up in an "L" shape, including D.A., I.M., N.R. and I.W.W. The Defendant observed that these seven or eight people were in various stages of undress.

While in Room 1 standing next to the Defendant and an unidentified female, Ms. Saluskin-Cloud told the seven or eight people without their clothes on something to the effect of "If you want to try anything I will cut two limbs then you can walk free." Ms. Saluskin-Cloud was holding a machete in her hand when she made this statement. Ms. Saluskin-Cloud then gave the machete to the unidentified female and told her "If they do anything, cut off their limbs." The unidentified female with the machete then told the seven or eight people without their clothes on that "If they do anything, [she'll] cut off their limbs." The unidentified female subsequently hit a chair with the machete. Ms. Saluskin-Cloud then instructed the Defendant, who was still in the possession of the gun,

to "watch" the seven or eight people without their clothes on and "keep" them in Room 1. Ms. Saluskin-Cloud further instructed the Defendant to "make sure they don't do anything." Ms. Saluskin-Cloud subsequently left Room 1, leaving the Defendant with the gun in her pocket, the unidentified female holding the machete, and the seven or eight people without their clothes on.

After Ms. Saluskin-Cloud left Room 1, the Defendant sat in a chair close to the unidentified female in front of the door, blocking the seven or eight people without their clothes on from escaping the room. The unidentified female then continued to instruct the seven or eight people without their clothes on "Don't move or I'll hurt you." The Defendant then began smoking fentanyl while sitting in the chair near the unidentified female in front of the door. A few moments later, D.A. threw a microwave in the Defendant's direction, which hit the wall between the Defendant and the unidentified female with the machete. D.A. and I.M. then escaped Room 1 through the bathroom window. The remaining victims left the room shortly thereafter.

### b.    History and Characteristics of the Defendant

The Defendant has a long criminal history involving arrests and convictions for thefts, drug use, criminal trespass, forgery, domestic violence assault, breaking and entering, and child abuse or neglect. ECF No. 73 ¶¶ 42-88. The Defendant has a history of substance abuse involving both drugs and alcohol dating from her adolescence as well as mental health issues. *Id*. ¶¶ 107-120. The Defendant has limited education and

employment history. *Id*. ¶¶ 121-122.  The Defendant also appears to have no meaningful relationship with her four children having lost custody of them as a result of her substance abuse. *Id*. ¶¶ 87-88, 93.  The Defendant also reported being the victim of a kidnapping similar to the instant offense, which the Defendant aided and abetted. *Id*. ¶¶ 103-104.

Although the Defendant appears to have experienced trauma and suffers from an addiction to fentanyl and other illicit substances, these characteristics of the Defendant do not outweigh her conduct in the instant offense involving between four and eight victims.  *See United States v. Wisecarver*, 644 F.3d 764, 744 (8th Cir. 2011) ("The district court's choice to assign relatively greater weight to the nature and circumstances of the offense than to the mitigating personal characteristics of the defendant is well within the wide latitude [given] to individual district court judges in weighing relevant factors.").

    **2.**    **THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT**

A sentence of 27 months imprisonment is necessary to reflect the seriousness of the offenses in this case.  The Defendant aided two other individuals with forcibly holding between four and eight people in a room at knife and gunpoint.  The victims in this case reported being afraid for their lives during the kidnapping incident and remain deeply traumatized by the event.  D.A. ran barefoot and partially clothed to a nearby facility to seek help, and I.M. ran over a mile in the middle of the night to the Yakama Nation Police Department in her bra and underwear.

UNITED STATES' SENTENCING
MEMORANDUM - 12
Case No. 1:24-CR-02054-MKD-2

If D.A. had not taken the courageous step to throw a microwave at the Defendant to facilitate the escape of the captives in the room, the situation could have easily escalated to assaults resulting in serious bodily injury or even death given the number of perpetrators involved, the threats made to the victims, and the dangerous and deadly weapons present in the room.

**3.   THE NEED FOR THE SENTENCE IMPOSED TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT AND TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT**

A maximum guideline sentence of 27 months imprisonment is necessary to afford adequate deterrence and to protect the public from further crimes of the Defendant. Accountability for aiding and abetting violent crimes on the Yakama Indian Reservation is critical to ensuring justice and deterrence. Those who assist, encourage, or facilitate an assault are indispensable to its commission and their conduct only magnifies the harm inflicted on the victims and community. Excusing such conduct with a less than maximum guideline sentence in this instance has the potential to create a dangerous loophole that allows individuals to enable violence without adequate consequences. By holding individuals like the Defendant who aid and abet violent crime responsible, the Court affirms that all participants in an assault—whether they make the threats armed with a machete or stand behind the aggressor blocking the door—share culpability for the resulting harm and trauma and must face the consequences of their choices. In this case,

UNITED STATES' SENTENCING
MEMORANDUM - 13
Case No. 1:24-CR-02054-MKD-2

a maximum guideline sentence of 27 months affords adequate deterrence and protects the public from further crimes of the Defendant.

> 4. **THE NEED FOR THE SENTENCE IMPOSED TO PROVIDE DEFENDANT WITH NEEDED EDUCATION OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER**

As demonstrated by the Defendant's continued use of methamphetamine and fentanyl use while on conditions of pre-trial release—even after completing inpatient treatment—the Defendant is in need of long-term substance abuse treatment, which could be achieved through RDAP or another treatment program through BOP. The Defendant lacks a High School diploma or GED and seems to have never maintained employment for any notable period of time; thus, the Defendant also appears to be in need of educational and vocational training. A maximum guideline sentence of 27 months would ensure the Defendant has adequate time to meaningfully engage in treatment and rehabilitative programing offered by BOP. A sentence of 3 years supervised release following a 27-month term of imprisonment will also help to ensure the Defendant receives the support and resources she needs to maintain sobriety and lead productive life. A sentence of 3 years of supervised release will also ensure that the Defendant is held accountable for her choices once she returns to the community and does not resume the dangerous and destructive behavior, she has engaged in most of her adult life.

UNITED STATES' SENTENCING
MEMORANDUM - 14
Case No. 1:24-CR-02054-MKD-2

Dated: September 2, 2025

S. Peter Serrano
United States Attorney

*s/ Bree R. Black Horse*
Bree R. Black Horse
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Stephen Hormel and Michael Merrit.

<i>s/Bree R. Black Horse</i><br>
Bree R. Black Horse<br>
Assistant United States Attorney